IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00286-EWN-MEH

RONALD T. REGGANS,

      Applicant,

vs.

BILL OWENS, and
JOHN SUTHERS, Attorney General of Colorado,

      Respondents.

---

## RECOMMENDATION FOR
## DISMISSAL OF AMENDED APPLICATION

---

**Entered by Michael E. Hegarty, United States Magistrate Judge**

Applicant has pending before this court an Amended Application for a Writ of Habeas Corpus

Pursuant to 28 U.S.C. § 2241 ("Amended Application").  Respondents have filed an Answer to the

Amended Application, arguing that Applicant's claims have no merit.  Applicant has not submitted

a Traverse in this regard.  Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1, this matter

has been referred to me for Recommendation on dispositive matters and for ruling on nondispositive

matters.  Based on the record contained herein, I **recommend** that the Amended Application be

denied and that this matter be dismissed, with prejudice.

The parties are advised that they shall have ten (10) days after service hereof to serve and file

any written objections in order to obtain reconsideration by the District Judge to whom this case is

assigned.  FED. R. CIV. P. 72.  The party filing objections must specifically identify those findings or

recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

## FACTS

The record demonstrates that the Applicant, a Colorado state prisoner, is serving a sentence based on pleas of guilty to murder and assault (Docket #3).  Originally, the Applicant filed this matter under 28 U.S.C. § 2254, but upon initial review by the Court, it was determined that two of the claims presented by the Applicant may be time-barred or barred for failure to exhaust state court remedies and that a third claim was more appropriately raised under 28 U.S.C. § 2241 (Docket #4). Applicant was directed to show cause why the Application should not be dismissed for these reasons (Docket #4). Following the receipt of Applicant's response (Docket #5), he was allowed to file an Amended Application pursuant to 28 U.S.C. § 2241 (Docket #6).  The Amended Application was filed on March 24, 2005 (Docket #7).

In the Amended Application, the Applicant claims to be eligible for parole, but that the Colorado State Board of Parole ("Parole Board") denied him parole when he met with them on

January 18, 2005 (Docket #7, p. 2).  In his claims, Applicant seeks relief pursuant to 28 U.S.C. § 2241 under allegations that the Parole Board (1) violated his plea agreement by denying him parole, (2) abused its discretion in denying him parole because it erroneously considered aggravating factors (*i.e.*, public risk/inadequate time served, etc.) in making the decision rather than the information set forth in his presentence reports, parole reports and plea agreement, and (3) erred in requiring that he participate in treatment programs that have only been required by law for purposes of attaining parole after his date of sentencing (Docket #7, pp. 3-4).  Additionally, in his response to the Order to Show Cause, the Applicant raised due process concerns (Docket #5).

Respondents have countered the Applicant's allegations by accurately citing the current state of the law which restricts a federal court's review of decisions made by a state Parole Board. Respondents contend that the Applicant's allegations of violations of his plea agreement must be exhausted through state remedies prior to consideration under federal habeas standards, that the parole proceedings were conducted in accordance with the procedures prescribed by Colorado Law, and that the Board's decision to deny parole must be upheld because there was a rational basis for the decision.

## DISCUSSION

### I.       Standard of Review.

To prevail in a federal habeas action brought pursuant to 28 U.S.C. § 2241, an applicant who is a state prisoner must generally show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  A *pro se* pleading is held to a less stringent standard than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, dismissal of a habeas application can be

made where it appears from its face that the applicant is not entitled to relief. *See Lonchar v. Thomas*, 517 U.S. 314, 320 (1996) (discussing summary dismissal under Rule 4 of the Rules Governing Section 2254 Cases); *see also* Rule 1(a) of Rules Governing Section 2254 Cases (scope of rules governs habeas applications outside of those brought under 28 U.S.C. § 2254).

Exhaustion of available state remedies is generally required for applications brought under 28 U.S.C. § 2241. *Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000) ("A habeas [applicant] is generally required to exhaust state remedies whether his action is brought under § 2241 or § 2254."). "However, that requirement is not applicable when the prisoner has no adequate remedy such that exhaustion would be futile." *Wilson v. Jones*, 430 F.3d 1113, 1118 (10th Cir. 2005). Additionally, a prisoner may seek federal habeas corpus relief without first seeking review of the Parole Board's decision in the Colorado state courts. *See Wildermuth v. Furlong*, 147 F.3d 1234, 1235 n.1 (10th Cir. 1998). The Parole Board's decision is reviewed for abuse of discretion to determine whether its action resulted in an abridgement of the prisoner's constitutional rights. *Id.* at 1236.

## II.   Claim One.

In his Amended Application filed pursuant to 28 U.S.C. § 2241, the Applicant has filed a first claim that is identical to the first claim he sought to file under 28 U.S.C. § 2254 in his initial Application, which argues that he is not being released on mandatory parole in violation of the plea agreement reached in his criminal case (Dockets #3 and #7). Applicant admitted in his initial Application that he has not presented this claim, or any other that he raises in this Court, to the state courts (Docket #3). In his response to the Court's Order to Show Cause why the claim should not be dismissed under § 2254 because it was time barred and/or because the Applicant had not exhausted his state court remedies, the Applicant responded that he was not challenging the validity of his

4

conviction but is instead challenging the execution of his sentence because the Parole Board is violating the terms of his plea agreement by not releasing him now that he has served the prison portion of his sentence (Docket #5). The simple fact that the Parole Board has or has not violated the plea agreement is not grounds for federal habeas relief under § 2241. To obtain federal habeas relief under § 2241, the Applicant must demonstrate that a violation of the federal constitution or other federal law has occurred. Applicant has indicated he considers the actions of the Parole Board to be a due process violation (Docket #5).

The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property without due process of law." Due process questions are examined in two steps. First, it must be determined whether the state has interfered with a liberty or property interest. Second, if the state has interfered with such an interest, it must be determined whether the procedures which led to the deprivation were constitutionally sufficient. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 459 (1989) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972)).

Liberty or property interests which merit the protection of the Due Process Clause may arise from two sources, the Due Process Clause itself or state law. *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). The United States Supreme Court has held that "(t)here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979). As a matter of pure constitutional law, the Applicant has no liberty interest in release on parole.

A constitutionally protected liberty interest may be created when state statutes or regulations place substantive limitations on the exercise of official discretion. *See, e.g., Greenholtz*, 442 U.S. at 8-11. To show that a state parole system places substantive limitations on the discretion of decision

5

makers, giving rise to a liberty interest protected by the Due Process Clause, an inmate must establish that the statute or regulations provide particularized criteria for the decision maker to follow, and that the standards meaningfully constrain the decision maker's discretion.  *Sultenfuss v. Snow*, 35 F.3d 1494 (11th Cir. 1994).  In Colorado, the Parole Board "may parole any person . . .when the Board determines . . .that there is a strong and reasonable probability that the person will not thereafter violate the law and that his release. . . is compatible with the welfare of society."  COLO. REV. STAT. § 17-22.5-404(1).  Colorado law does not put substantive limitations on the Parole Board's discretion, and thus does not create a liberty interest in release on parole.

Additionally, in this case, the Applicant admits that "the type and length of sentenced imposed" against him was "20/life" (Docket #3, p. 2).  By state law, under such a sentence, a prisoner is only underlined eligible for parole upon serving underlined at least 20 calendar years.  *See* COLO. REV. STAT. § 17-22.5-104(2)(b).  Therefore, under the sentence the Applicant received, state law did not create a constitutionally protected liberty interest in release on parole; it only provided a starting point for Applicant to be underlined considered for parole after he has served 20 calendar years.

Additionally, even if the state had interfered with a liberty interest with regard to Applicant's parole, the record establishes that the procedures utilized were constitutionally sufficient.  *See generally Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (procedural due process requirements are generally satisfied by appropriate notice and an opportunity to be heard).  The Constitution requires nothing more when parole is denied than that the inmate be informed "in what respects he falls short of qualifying for parole."  *Greenholtz*, 442 U.S. at 16.  The statement of reasons given to the Applicant in this regard satisfied this standard.

Applicant appears to argue that the plea agreement in his criminal case created a liberty interest because he claims that under the terms of the plea agreement, he was to serve 20 years and then be released on parole.  Because he has served the required 20 years, and not been released on parole by the Parole Board, he contends a violation of the plea agreement has occurred.  The actual plea agreement has not been supplied to this Court, but is not necessary to resolution of the claims raised in the Amended Application because:

> A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest.  It is the ensuing guilty plea that implicates the Constitution.  Only after . . . [the criminal defendant pleads] guilty [is] he convicted, and it is that conviction which [gives] rise to the deprivation of [the defendant's] liberty . . . .

*Mabry v. Johnson*, 467 U.S. 504, 507-08 (1984).

Logically, if a plea agreement itself cannot deprive an accused of liberty, it also cannot create a liberty interest which would implicate due process.  As *Mabry* teaches, the heart of the matter for constitutional analysis purposes is the plea of guilty.   The Applicant indicates that under the plea agreement, he "was told he would do 20 calendar years" and "at the end of 20 years [he] would do the 1 year mandatory parole" (Docket #3, p. 2).  As a result, when the Parole Board reached a decision contrary to that anticipated by the Applicant pursuant to his understanding of the plea agreement, he contends the plea agreement was not fulfilled.  However, regardless of the reasons for the frustration of a plea agreement, the frustration calls into question the validity of the plea because issues regarding what the actual terms of the plea agreement were, who was to be bound by the agreement, and the Applicant's understanding of those terms, raise concerns regarding the voluntary nature of the Applicant's plea of guilty. *See Brady v. United States*, 397 U.S. 742, 755 (1970) (a

"plea of guilty entered by one fully aware of the direct consequences" of the plea is voluntary in a constitutional sense). Issues implicating the validity of Applicant's conviction, not the execution of his sentence, are not appropriate for consideration under 28 U.S.C. § 2241. *See Montez*, 208 F.3d at 865. Therefore, Applicant cannot demonstrate a constitutionally protected liberty interest under § 2241 which would entitle him to relief based on the plea agreement and the claim should be denied.

Even if the Court were to liberally construe the Applicant's *pro se* allegations as a challenge to the validity of his conviction under the more appropriate provisions of § 2254, the first hurdles which the Applicant faces are exactly those that were raised by the Court in its previous Order to Show Cause: a problem with the statute of limitations and/or failure to exhaust the claim in the state courts. The Applicant is reminded that in the Order to Show Cause, the Court determined his first claim was properly asserted pursuant to § 2254 (Docket #4, p. 2). Simply saying that he is challenging the execution of his sentence, rather than its validity, does not automatically make it appropriate under § 2241. Without a constitutionally protected interest which does not challenge the validity of his conviction, as analyzed above, the claim fails. Second, the factual determination of whether a breach of the plea agreement has occurred is a question for the trial or sentencing court to resolve, *see United States v. Gonzalez-Sanchez*, 825 F.2d 572, 578 (1st Cir. 1987), and allegations that prison officials, and not the prosecution, breached a plea agreement generally fail to state a constitutional claim for purposes of federal habeas relief, *see O'Hara v. Wigginton*, 24 F.3d 823, 827 (6th Cir. 1994).

Finally, even if a federal court holds that a plea agreement has been breached or violated, the Constitution neither compels nor requires "specific performance of a broken . . . promise as a remedy." *Mabry,* 467 U.S. at 510. The Supreme Court has instructed that the "ultimate relief to

which [a defendant] is entitled." should be left to the discretion of the trial court.  *Santobello v. New York*, 404 U.S. 257, 263 (1971).   In this case, the Applicant is a state prisoner, but there is no evidence the he first asked the state courts to enforce the plea agreement under either the postconviction remedies found under Colo.R.Crim.P. 35 or the state habeas statute at Colo.Rev.Stat. § 13-45-101 or any state law.   Additionally, specific performance or enforcement of the plea agreement in this instance would mean binding the Parole Board to the plea agreement, which would directly interfere with the Board's discretion and performance of its own statutory obligations.   "The strong considerations of comity that require giving a state court system that has convicted a defendant the first opportunity to correct its own errors . . . also require giving the States the first opportunity to correct the errors made in the internal administration of their prisons."  *Preiser v. Rodriguez*, 411 U.S. 475, 492 (1973).   Aside from Applicant's conclusory view that he does not have a remedy under state law, which is insufficient to demonstrate there is not, an obvious impediment to his use of state remedies does not exist.   *See* COLO. REV. STAT. § 16-5-402 (no limitations period on collateral attack by class 1 felon); *Jones v. Zavaras*, 926 P.2d 579, 581 (Colo. 1996) (purpose of writ of habeas corpus is to determine whether a person is being detained unlawfully and therefore entitled to immediate release from custody); *Naranjo v. Johnson*, 770 P.2d 784, 786 (Colo. 1989) (habeas relief may be available in some cases where complete discharge from custody will not result). Requiring the Applicant to present his claim to the state courts prior to seeking relief in this Court is most appropriate in this regard and, therefore, federal habeas review of this claim should be denied.

## II.    Claim Two.

In his second claim, the Applicant argues that the Parole Board erroneously considered aggravating factors (*i.e.*, public risk/inadequate time served, etc.) in making their parole determination

rather than the information set forth in his presentence reports, parole reports and plea agreement. When an inmate has no constitutional or state created right to release on parole, the decision of a parole board may not be overturned unless it was arbitrary, capricious, or an abuse of discretion. *Schuemann v. Colorado State Board of Parole*, 624 F.2d 172, 173 (10th Cir. 1980). The Parole Board's decision is not arbitrary or capricious if there is a rational basis in the record to support the denial of parole. *See, Lewis v. Beeler*, 949 F.2d 325, 332 (10th Cir. 1991). Here, the Notice issued by the Parole Board, as discussed by the Respondents in their Answer and not disputed by the Applicant, stated that the circumstances of the offense were an aggravating factor, that the Applicant had not served enough time, that his prior criminal record raised issues of public risk, and that he needed continued correctional treatment. By law, these reasons are appropriate for the Parole Board's consideration and provide a sufficient basis for the Parole Board's decision. *See Schuemann*, 624 F.2d at 174-75 (parole board concern that inmate had served short time for a serious offense sufficient basis for denial of parole; inmate had served 12 years of 20 year sentence). In reviewing this claim, this Court may not re-weigh evidence, rule on credibility matters, or substitute their judgment for the judgment exercised by the Parole Board. *See generally Fiumara v. O'Brien*, 889 F.2d 254, 257 (10th Cir. 1989).

Applicant argues that the Parole Board erred, because they did not consider the information contained within his presentence reports, parole reports or plea agreement, which established the terms for his sentencing. However, while it appears under state law that the Parole Board could have considered those matters, Applicant has cited no authority, and this Court is aware of none, which would require that it consider that particular information. "The determination of how to monitor an offender's progress and what, if any, weight the Parole Board chooses to place on the evidence before

it are matters solely for the Parole Board's consideration and discretion." *White v. People*, 866 P.2d 1371, 1373 (Colo. 1994). State law provides parole guidelines which are set out at Colo.Rev.Stat. § 17-22.5-404. Further, "parole determinations inherently do not lend themselves to concrete and identifiable standards." *Schuemann*, 624 F.2d at 174. The decision whether to release an inmate on parole is "subtle and depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release." *Greenholtz*, 442 U.S. at 9-10. "The decision turns on a 'discretionary assessment of a multiplicity of imponderables.'" *Id.* As noted above, the Parole Board rejected Applicant's parole request because of aggravating factors, inadequate time served, and his need for continued correctional treatment. Although these reasons are not explained in any great detail, they are supported by the record and are sufficient. *See Schuemann*, 624 F.2d at 174. "It would be discordant to require unduly specific and detailed reasons from a Board vested with subjective, predictive, and experimental function." *Id.*

Applicant also argues that the Parole Board has improperly required him to secure documents such as his plea agreement from his criminal proceedings for review at parole proceedings. However, there appears no authority under which the Parole Board must secure the information the Applicant claims it should consider with regard to his parole. Accordingly, it is not improper for the Parole Board to require the Applicant to obtain the information and provide it to the Parole Board. If the Applicant is financially unable to pay the costs of securing this information, there are avenues through the state's *in forma pauperis* statutes to request the information.

11

There is no basis in the record to conclude that the Colorado Parole Board's decision to deny parole to Applicant was arbitrary or capricious.  Accordingly, the Applicant is not entitled to federal habeas relief on this claim.

## IV.    Claim Three.

In his final claim, the Applicant appears to argue that requiring that he participate in treatment programs that have only been required by law for purposes of attaining parole after the date of his sentencing constitutes an *ex post facto* violation, and therefore, violates his constitutional rights. Law, policies, and other actions violate the *ex post facto* clause if they punish behavior not illegal at the time it was committed, or increase punishment beyond that which was authorized at the time of the offense.  *See Garner v. Jones*, 529 U.S. 244, 249-50 (2000).  *Ex post facto* restrictions apply to parole matters.   *See id*. at 250-55.  "[T]he *ex post facto* prohibition . . . forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Weaver v. Graham*, 450 U.S. 24, 30 (1981).  The application of treatment requirements to the Applicant has not resulted in an increase in the penalty for the offenses of which he was convicted. The Tenth Circuit has noted that "in rehabilitative matters, prison officials may consider any history established in the inmate's record which it may determine requires treatment" and has opined that when the application of a treatment program does not affect the legal consequences of an inmate's crime or increase his punishment, there is no *ex post facto* violation.  *See Chambers v. Colorado Dept. of Corrections*, 205 F.3d 1237, 1242 (10th Cir. 2000).  As Applicant indicated, his sentence was "20/life."   Therefore, the Applicant has not stated a claim for an *ex post facto* violation.

Parole decisions are discretionary, and an inmate's choice between the opportunity to gain favorable parole status or decline that opportunity by refusing to participate in a treatment program

also does not rise to the level of a Due Process violation.  *See Gwinn v. Awmiller*, 354 F.3d 1211, 1226-27 (10th Cir. 2004).  Additionally, under *Sandin*, "deprivations of process impacting on parole decisions may be 'too attenuated to invoke the procedural guarantees of the Due Process Clause,' but that a "claim that [an applicant] is being denied parole *solely* on the basis of his failure to participate in [a treatment program] is not so attenuated" and that, as a result, the applicant "might, therefore, potentially state a due process violation."  *Reed v. McKune*, 298 F.3d 946, 954 (10th Cir. 2002).  However, in this case, the record establishes that Applicant's failure to participate in treatment programs was not the sole reason he was denied parole. Therefore, due process is also not implicated.

**V.     Evidentiary Hearing.**

The issues presented in the Application exclusively concern issues of law, with the general facts necessary to determine those issues not in dispute and already contained in the record. Accordingly, an evidentiary hearing in this regard is not required.  *See generally* 28 U.S.C. § 2243 (when entertaining an application for habeas corpus, a court must hold a hearing at which the applicant is present, unless the writ and return present only issues of law).

**CONCLUSION**

Based upon the entire record herein, I **recommend** that the Amended Application [Filed March 24, 2005;Docket #7] be **denied** and that an Order directing that this case be dismissed with prejudice be entered.

Dated at Denver, Colorado, this 21st day of March, 2006.

BY THE COURT:

 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge